UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **David R. Hargett**, | ) | **CASE NO. 5:22 CV 1774** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| | ) | |
| **Commissioner of Social Security,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon the Report and Recommendation of Magistrate Judge Darrell A. Clay ("R&R")(Doc. 18) recommending that the decision of the Commissioner be affirmed. Plaintiff has filed objections. The R&R is ACCEPTED, and the decision of the Commissioner is AFFIRMED.

**FACTS**

Only those fact necessary for a resolution of the objections are set forth herein. At issue is plaintiff's claim for disability insurance benefits ("DIB"). In October of 2015, plaintiff filed a claim for DIB alleging an onset date of March 6, 2015. The claim proceeded through the

1

administrative process, as well as the federal court system.  Ultimately, the Sixth Circuit reversed defendant's decision on the grounds that the administrative law judge ("ALJ") did not properly apply the treating physician rule.  The district court remanded the matter to defendant for further proceedings.  Defendant's date last insured ("DLI") is March 31, 2016.  On remand, defendant considered a second claim for supplemental security income ("SSI").  The ALJ found plaintiff capable of performing a light range with certain limitations since the filing date of the SSI claim.  Plaintiff's age category changed on March 5, 2020, at which point plaintiff became disabled.  Plaintiff did not appeal the findings with respect to the SSI claim.  Only plaintiff's DIB claim is before this Court.

### STANDARD OF REVIEW

When objections are made to a Magistrate Judge's Report and Recommendation, the district court reviews the case *de novo*.  Federal Rule of Civil Procedure 72(b) provides in pertinent part:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.  The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

### ANALYSIS

Plaintiff raises two objections to the R&R.  According to plaintiff, the ALJ erred in analyzing the 2021 functional capacity evaluation ("FCE") and the letter submitted by Dr. Lucardie, plaintiff's treating physician.   Plaintiff also objects to the ALJ's weighing of Dr. Lucardie's 2015 opinion.  Each objection will be addressed in turn.

1. 2021 FCE and letter (collectively, "2021 Opinion")

Plaintiff argues that the ALJ dismissed the 2021 Opinion because the findings were "too remote" and had no connection to the DIB period. Plaintiff argues that the R&R improperly determined that the 2021 Opinion showed only medical history and that the opinion showing a "worsening gait" is not relevant. According to plaintiff, the "larger issue" is plaintiff's breathing difficulties.

Upon review, the Court rejects plaintiff's objection. In 2021, Dr. Lucardie opined as follows,

> [Plaintiff] is a patient of mine whom I have been seeing since 2009. He suffers from severe COPD/emphysema, uncontrolled type 2 diabetes, hypertension, obstructive sleep apnea, morbid obesity, carpal tunnel syndrome, ulnar neuropathy, restless leg syndrome, and hyerlipidemia.
>
> His medical conditions have and continue to cause significant debility affecting his ability to work. [Plaintiff] has severe COPD with lung capacity of 35-40% of predicted for his age, sex, and height. This causes significant shortness of breath with minimal exertion. On examination in office, he regularly exhibits shortness of breath with exertion and wheezing on lung exam.
>
> His functional capacity is further limited by musculoskeletal conditions.... I have reviewed recent functional capacity evaluations from 2015 and 2021, which show similar results and I concur with the findings of significantly [sic] functional limitations with worsening gait imbalance. Based on these findings and his limited lung capacity I believe [plaintiff] would not be able to perform work above a sedentary exertional level would [sic] not be able to sustain full time work.

In the context of the DIB claim, the ALJ determined that the evidentiary folder for plaintiff's SSI claim contained additional opinion evidence post-dating the DIB period. The ALJ noted that the folder contained medical findings from state agency consultants, a medical opinion from a consultative psychologist, a second FCE conducted in 2021 and a "narrative statement from [Dr. Lucardie] that was also offered very recently in August 2021." With regard to this

evidence, the ALJ concluded as follows,

> None of this opinion evidence from 2019 through 2021 has any connection to the very limited period at issue for the Title II claim from March 2015 through March 2016. Accordingly, all such later opinion evidence received little weight and Dr. Lucardie's statement is not a candidate for 'controlling weight' because of this factor and because they were all based on objective medical evidence and/or statements from the claimant and/or other factors that do not relate to the Title II period.

The treating physician rule in effect at the time plaintiff filed his claim provides that "if a treating source's opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight; i.e. it must be adopted." *Emard v. Commissioner of Social Security*, 953 F.3d 844, 849 (6th Cir. 2020). However, "evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status." *Id*. at 850.

As an initial matter, Dr. Lucardie authored the letter well after the relevant period. Like the plaintiff in *Emard*, the letter notes that Dr. Lucardie has treated plaintiff since 2009, which was during the relevant period of plaintiff's DIB claim. A review of the opinion, however, does not disclose that the opinion is directed at plaintiff's condition as it existed in 2015-2016. Rather, the statements in the opinion are provided in the present tense. *Id*. By way of example, Dr. Lucardie indicates that plaintiff "suffers from" a number of conditions. He further opines that "Plaintiff] has severe COPD with lung capacity of 34-40% of predicted for his age, sex, and height," and that it "causes significant shortness of breath with minimal exertion." There is no indication, however, that these findings and opinions are directed at the 2015-2016 time period, as opposed to a later time period. Similarly, Dr. Lucardie indicates that plaintiff "regularly exhibits shortness of breath with exertion and wheezing on lung exam." But, his office notes from the relevant time period do not indicate that plaintiff regularly exhibited shortness of breath

with exertion upon examination. And again, this statement does not describe the relevant time period. There is only one statement arguably indicating that his letter may be directed to a time period prior to 2021. Dr. Lucardie notes that plaintiff's "medical conditions have and continue to cause significant debility affecting his ability to work." The statement does not indicate that Dr. Lucardie is referring to 2015-2016. This is important given the *significant* passage of time between the date last insured and Dr. Lucardie's letter.

Moreover, as the Magistrate Judge notes, the 2021 Opinion describes worsening conditions over time. Dr. Lucardie discusses the FCE in the context of musculoskeletal limitations and notes that plaintiff's gait worsened. Moreover, plaintiff appeared at the FCE with a cane, which is the first time the record discloses use of a cane. Plaintiff argues that the Court should discount Dr. Lucardie's statement regarding plaintiff's "worsening gait" as plaintiff's claim is based primarily on his breathing problems. But, Dr. Lucardie specifically *combines* the worsening gate with plaintiff's breathing problems. In addition, as the ALJ notes in discussing plaintiff's SSI claim, plaintiff complained of several new symptoms in the 2021 FCE. Moreover, an FCE, by definition, tests a claimant's abilities to perform work-related functions on the date it is administered. By referencing worsening symptoms and speaking in the present tense, the Court cannot say that the ALJ erred in determining that the evidence is not relevant to the DIB time period.[1] Because substantial evidence supports the ALJ's determination, plaintiff's objection is not well-taken.

---

[1] The Court notes that plaintiff did not challenge the ALJ's determination that, based in part of Dr. Lucardie's letter, plaintiff was capable of performing light work from October 23, 2018 through March 5, 2020.

2. Dr. Lucardie's 2015 opinion

This case was previously pending by consent before one of the Court's magistrate judges. The magistrate judge ruled in favor of defendant, and plaintiff appealed. The Sixth Circuit reversed, finding that the ALJ violated the treating physician rule. After determining that a treating physician's adoption of an FCE renders the FCE a treating-source opinion, the Court reviewed the ALJ's analysis and found it deficient:

> Given the FCE in this case is a treating-source opinion, the ALJ's decision fails to provide good reasons for the weight given to it.  Although the ALJ stated that he gave the FCE 'partial weight,' the extent of the ALJ's reasoning is that '[the FCE] was not based on a treating relationship.' '[t]he overall medical record does not indicate such significant limitations.... *** These bare, conclusory statements neither satisfy the notice requirement of the good reasons rule nor allow us to review meaningfully whether the ALJ properly applied the treating physician rule.

*Hargett v. Commissioner of Social Security*, 964 F.3d 546, 553-54 (6th Cir. 2020).

The Sixth Circuit went on to note that the ALJ failed to meaningfully explain the factor of consistency and supportability and "completely discounted the nature and extent of Dr. Lucardie's treatment relationship with [plaintiff] without explanation, saying simply that the FCE 'was not based on a treating relationship.'" *Id*. at 554.  In addition, the Sixth Circuit found:

> Second, and more critically, the ALJ's conclusory statements fail to identify the specific ways in which the FCE is not consistent with [plaintiff's] overall medical record.  By the same token, the ALJ fails to identify the ways in which Dr. Sethi's opinion that [plaintiff] can sit, stand, and walk for up to 8 hours  to which the ALJ gave 'great weight'    is 'consistent with the overall weight of the record.'  For example, Dr. Lucardie's examination notes indicate several times that plaintiff suffered from ongoing shortness of breath, especially with physical exertion.  The ALJ's reasoning does not explain how the FCE is inconsistent with Dr. Lucardie's observation of plaintiff's difficulty with physical exertion, or how Dr. Sethi's opinion is consistent with it.  In short, the ALJ's decision demonstrates no apparent attempt 'to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.'

*Id*.

The Sixth Circuit also rejected the government's argument that any error in assessing the

6

opinion of Dr. Lucardie was harmless. The court noted that harmless error can be found in limited circumstances, including where: (1) a treating source's opinion is patently deficient; (2) the defendant made findings consistent with the opinion; and (3) the purposes of notice and meaningful review are satisfied. *Id*. With respect to the second circumstance, the Sixth Circuit held that "the FCE's opinion that [plaintiff's] ability to stand or walk does not meet any standard for work activity is not 'patently deficient' because it is *based on objective observation and defined criteria*.'" *Id*. (Emphasis added).

On remand, the ALJ declined to assign controlling weight to the opinion of Dr. Lucardie. Th ALJ reasoned as follows,

> To receive controlling weight, a treating source's medical opinion must be well supported by medically acceptable clinical and laboratory diagnostic techniques, and it must also not be inconsistent with other substantial evidence in the case record..... Regardless of ratification by co-signor, such observations from a physical therapist do not constitute "medically acceptable" clinical findings or laboratory diagnostic techniques, and this factor alone prevents assigning controlling weight to the FCE's conclusions.

(Doc. 9-1 at PageID 762).

Plaintiff argues that the ALJ committed a legal error in concluding that the FCE does not constitute medically acceptable clinical findings or laboratory diagnostic techniques. According to plaintiff, the Sixth Circuit held to the contrary when it determined that the FCE's opinion is not patently deficient because it is based on "objective observation and defined criteria." The Magistrate Judge appears to have partially agreed noting that the ALJ's conclusion in this regard is "particularly puzzling." Regardless, the Court need not address whether an FCE itself is a "medically acceptable clinical findings or laboratory diagnostic technique," because the Court finds that the ALJ did not err in determining that Dr. Lucardie's FCE opinion is inconsistent with

7

other substantial evidence.² The Court does note, however, that the ALJ is not *required* to accept each aspect of the FCE opinion. *See*, *Adams v. Commission of Social Security*, 2023 WL 6366106 (6th Cir. Sept. 23, 2023)("Nothing in *Hargett* suggests that an ALJ is required to accept the conclusions of an allegedly objective FCE or that an ALJ needs medical credentials to find that an FCE's conclusions are unpersuasive.")

Upon review, the Court finds that the ALJ's analysis comports with the Sixth Circuit's holding in this case. The ALJ identified the ways in which the FCE is not consistent with the overall record. In assessing whether to afford controlling weight to the FCE, the ALJ noted that Dr. Lucardie adopted all of the FCE's limitations. Dr. Lucardie, however, conducted no musculoskeletal examinations during the relevant period, and Dr. Lucardie's notes disclose no treatment for limited mobility. Regarding plaintiff's COPD, the ALJ indicated that Dr. Lucardie's office notes indicate diffuse wheezing upon examination. But, the notes also show that the wheezing improved with the use of a nebulizer and use of a daily inhaler. The ALJ further noted that during the consultative physical examination performed by Dr. Sethi just two months after the FCE, plaintiff did not display exertional dyspnea during any of the physical maneuvers. Dr. Sethi observed "good air entry in both lungs, no bronchial breathing, and only occasionally audible expiratory wheezes and scattered ronchi on asculation of the lungs." (Doc. 9-1 at PageID 755). The ALJ further expressly discussed two spirometry studies done in 2015 and 2016. The ALJ acknowledged that the studies disclosed "moderately severe" obstruction,

---

² Plaintiff argues that the ALJ's failure to recognize the FCE as a medically acceptable clinical finding or laboratory diagnostic technique permeated his analysis. The Court disagrees. The ALJ plainly analyzed the grounds for assigning less than controlling weight in two separate sections.

8

which is consistent with a diagnosis of COPD.  The ALJ further indicated, however, that the 2016 test showed improvement in the results.  Within the opinion, the ALJ correctly noted that Dr. Lucardie appears to have erroneously reported the results.  Dr. Lucardie indicated that the results were "unchanged," despite the fact that the FEV1 test showed a "higher forced expiratory volume of 2.29 L, BTPS as well as forced volume capacity of 3.11 liters."  (Doc. 9-1 at PageID 755).  Plaintiff's previous FEV1 reading was 1.91.  The ALJ further noted that the tests were performed pre-bronchodilator.  These facts provide a sufficient basis for the ALJ's decision not to afford "controlling weight" to Dr. Lucardie's FCE opinion.

The ALJ went on to assign "little weight" to the FCE opinion.  The ALJ opined that the opinion is not supported by the medical record.  The ALJ notes that the FCE itself is internally inconsistent because it found plaintiff capable of, among other things, "lifting and carrying" at the medium exertional level, yet found plaintiff significantly limited in, for example, standing.  The ALJ noted that, while the FCE signed by Dr. Lucardie constitutes a treating source opinion, Dr. Lucardie is a primary care physician.  At no point did he refer plaintiff to a specialist in pulmonology or orthopaedics.  Plaintiff saw Dr. Lucardie only "every two to four months and, at points, more distanced."  (Doc. 9-1 at PageID 753).  The ALJ concluded that the frequency of treatment was "relatively low."  The ALJ further noted that the treatment prescribed was conservative.  In addition, Dr. Lucardie's notes do not show any "observations about [plaintiff] visibly becoming short of breath when walking in-office distances or when standing at station.[3]"

---

[3]  The Court notes that the Sixth Circuit expressed concern that during some office visits with Dr. Lucardie plaintiff reported shortness of breath with physical exertion.  The Court cannot say that the ALJ erred in analyzing the opinion.  As the ALJ notes, other office notes during the same time period show improvement

The ALJ further indicates that it is inconsistent with other evidence "discussed in the preceding parts of this Finding." In an earlier section of the ALJ's opinion, the ALJ discussed evidence demonstrating that plaintiff is not "as limited physically to the extent alleged in connection with this application." Specifically, the ALJ indicated,

> For, the July 3, 2015 cancellation of a treatment visit was based on his wife's statement that 'it is hay season and they have 190 acres to bail [sic in original]. Many months later, [plaintiff] returned to [his chiropractor] with a complaint of mid-back pain and spasms since April 28, 2106, which related to 'working on a 30+ year old tractor' that involved a 'lot of tugging and pulling.'

(Doc. 9-1 at PageID 759).

The Court finds that the ALJ did not err in his weighing of the FCE opinion evidence. The ALJ identified how the FCE is inconsistent with, and not supported by, plaintiff's overall medical record, including Dr. Lucardie's own treatment notes and records. The ALJ further discussed the nature and extent of the treatment relationship, noted that Dr. Lucardie is not a specialist, nor did he refer plaintiff to a specialist. Accordingly, the Court finds that the ALJ did not err in either failing to assign "controlling weight" to the FCE opinion or assigning the opinion "little weight."

**CONCLUSION**

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Darrell A. Clay ("R&R")(Doc. 18) is ACCEPTED and the decision of the Commissioner is AFFIRMED.

---

in plaintiff's pulmonary symptoms and no significant change in treatment. In addition, shortly after the DIB period, plaintiff denied shortness of breath with physical exertion at his exam, and reported only that the symptom may arise in hot weather. (Doc. 9 at PageID 682-83).

10

IT IS SO ORDERED.

Dated: 1/23/24

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge